**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERTHA MEJIA ESPINOZA, | CASE NO. 5:13-cv-00512 EJD |
| Petitioner(s), | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| TIMOTHY AITKEN, Field Office Director, San Francisco Field Office, United States Bureau of Immigration and Customs Enforcement, et. al., | [Docket Item No(s). 1] |
| Respondent(s). | |

In this immigration case, Petitioner Bertha Mejia Espinoza ("Petitioner") challenges her now 17-month detention by the Bureau of Immigration and Customs Enforcement ("ICE"). See Petition for Writ of Habeas Corpus ("Pet."), Docket Item No. 1. In essence, Petitioner argues that continued detention without review is unjustified, even under the mandatory provisions of 8 U.S.C. § 1226(c).[1] Respondents Timothy Aitken, Janet Napolitano and Eric Holder ("the Government")[2] disagree. See Response, Docket Item No. 12.

---

[1] Because the parties have done so in their briefing, the court will utilize the United States Code citations to the Immigration and Nationality Act in this Order. Unless otherwise noted, statutory references are to Title 8 of the United States Code.

[2] The defendants are each sued in their official capacities: Timothy Aitken as the Field Office Director at San Francisco ICE, Janet Napolitano as the Secretary of Homeland Security, and Eric Holder as the Attorney General of the United States.

1
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

A hearing on this matter was held on March 1, 2012. Having now considered the relevant pleadings and the arguments of counsel, the court has determined that one of Petitioner's arguments has merit. Accordingly, the Petition for Writ of Habeas Corpus will be granted for the reasons explained below.

## I. BACKGROUND

### A. Petitioner's Personal Information

Petitioner is a 53 year-old citizen and national of El Salvador. See Pet., at ¶ 15; see also Decl. of Bertha Mejia Espinoza ("Mejia Decl."), Docket Item No. 2, at ¶ 2. She came to the United States sometime in 1981 when she was approximately 22 years old, and has not left the United States since then. See Mejia Decl., at ¶ 2. She has four children who are citizens of the United States. Id.

Petitioner recounts a difficult life in El Salvador. Her father was killed when she was 10 years old. Id. at ¶ 3. As a result, Petitioner's mother moved their family from a village to the city in order to sell food at the market. Id. Petitioner, as the oldest female child, was forced to quit school and help her mother. Id. It was also around that time that Petitioner began to steal food so that her siblings would not go hungry. Id. This stealing continued as a means to alleviate the shame she felt as a result of abuse by her older cousin. Id.

After two member's of Petitioner's family were killed during a civil war, Petitioner fled El Salvador for fear of her own safety. Id. at ¶ 6. She left one child behind. Id. When Petitioner arrived in California, she found work cleaning homes and businesses and was able to send money back to El Salvador to support her daughter. Id. Petitioner's eldest daughter eventually joined her in the United States, and Petitioner gave birth to two more children while living here. Id. at ¶ 7.

In 2005, Petitioner was raped by the owner of a home she cleaned. Id. at ¶ 8. Petitioner sought medical treatment and spoke to law enforcement. Id. at ¶ 9. Petitioner was never called as a witness in connection with this incident and is not aware of the results of a criminal investigation. Id. at ¶ 10.

Since arriving in the United States, Petitioner has been arrested for shoplifting "many

1    times."[3] Her last arrest occurred in October, 2010, when Petitioner attempted to steal cheese from a
2    supermarket. Id. at ¶ 13. Petitioner plead nolo contendre to a felony charge under California Penal
3    Code § 666 and, it appears, was sentenced on or about March 7, 2011, to three years of probation
4    with credit for time served. Id. at Ex. D. As a result, Petitioner served one day in county jail for the
5    crime at the time of her arrest. Id. Petitioner believes her tendency to shoplift stems her childhood
6    experiences. Id. In 2011, Petitioner was diagnosed with kleptomania. See Cho Decl., at Ex. E.

7    Petitioner was arrested by ICE officers on September 17, 2011. Id. at ¶ 20. She has
8    remained in immigration custody since that time.

### B. The Removal Proceedings

10   After her arrest by ICE, the Government instituted removal proceedings alleging Petitioner
11   inadmissible pursuant to 8 U.S.C. § 1182 and detained her as a criminal alien pursuant to 8 U.S.C. §
12   1226(c). In response, Petitioner sought asylum and withholding of removal based on political
13   persecution. Id. at ¶ 4; see also Pet., at ¶ 21. Petitioner also applied for U-1 nonimmigrant status (a
14   "U-visa").[4] See Cho Decl., at ¶ 5. The Immigration Judge ("IJ") denied asylum and withholding of
15   removal on August 28, 2012, and the U-visa application was denied by United States Citizenship
16   and Immigration Services ("USCIS") on November 7, 2012. Id. Petitioner contends that deficient
17   preparation by her prior attorney caused the USCIS to deny her first U-visa application. Id.

18   Petitioner, represented by new counsel, appealed from the order denying asylum and filed a
19   new U-visa application in December, 2012. Id. at ¶¶ 6-7. On January 11, 2013, the Board of
20   Immigration Appeals ("BIA") remanded the removal action to the IJ "to ascertain the status of
21   [Petitioner's] application for U visa non-immigrant status, and if appropriate, determine whether she
22   has established good cause for a continuance to await adjudication of such application" by the
23   USCIS. See Decl. of Claire T. Cormier, Docket Item No. 21, at Ex. 1. As of this time, a master

---

[3] According to the Probation Report provided by Petitioner, her most recent arrest resulted in "her first felony conviction, in addition to 11 misdemeanors." See Decl. of Rosy H. Cho, Docket Item No. 3, at Ex. D.

[4] Generally speaking, an alien is eligible for a U-visa if he or she is the victim of certain "qualifying criminal activity" in the United States and assists in the investigation and prosecution of the crime. 8 C.F.R. § 214.14(b). The crime of rape is listed in the definition of "qualified criminal activity." 8 C.F.R. § 214.14(a)(9).

3
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

calendar hearing before the IJ has been scheduled for March 26, 2013. Id. at Ex. 3. With regard to the U-visa, Petitioner was notified by USCIS on or about February 1, 2013, that her second application establishes prima facie eligibility.[5] Id. at Ex. 2.

Petitioner also filed motions requesting a review of her custodial status on October 18, 2012, and December 20, 2012. See Cho Decl., at ¶¶ 14, 16. Both motions were denied by the IJ, who determined that immigration courts were not authorized by statute or case law to conduct bond review hearings for criminal aliens not subject to final orders of removal. Id. at Exs. G, H.

Having been unsuccessful before the IJ, Petitioner filed the instant Petition on February 6, 2013. This court issued an Order to Show Cause to the Government in response to Petitioner's initial filing and provided for briefing. See Docket Item No. 6.

## II. LEGAL STANDARD AND JURISDICTION

A federal district court may grant a writ of habeas corpus if, as Petitioner contends here, the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." Id.

In the context of immigration, some decisions regarding an alien's detention are not subject to judicial review, including those that are the product of the "Attorney General's discretionary judgment." 8 U.S.C. § 1226(e). "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Id. But this case does not implicate the Attorney General's "discretionary judgment." Instead, "[a]lthough [8 U.S.C.] § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."

---

[5] Although this information was not contained in the pleadings, counsel for the Government indicated at the hearing that USCIS issued a notice of its intention to deny Petitioner's second U-visa application on February 5, 2013. Counsel further indicated that March 10, 2013, is the deadline for Petitioner to submit supplemental information in response to that notification.

1  Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). Thus, "aliens may continue to bring
2  collateral legal challenges to the Attorney General's detention authority . . . through a petition for
3  habeas corpus." Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 946 (9th Cir. 2008).
4  Since the instant challenge implicates only constitutional issues and questions of law, it is properly
5  brought before the district court.

### III.  DISCUSSION

Petitioner makes three principal arguments in support of habeas relief. First, Petitioner contends that prolonged detention without a bond hearing is not authorized by § 1226(c). Second, Petitioner argues that § 1226(c) does not apply to her because it only governs ongoing detention when an alien is taken into custody by ICE "when . . . released" from criminal custody. Third, Petitioner asserts that § 1226(c) does not authorize mandatory detention of aliens with substantial claims for immigration relief.

Of these, the argument that some section other than § 1226(c) applies to Petitioner's detention must be addressed before the others. The reasons for doing so are twofold. As a threshold matter, deciding at the outset which statutory provision controls Petitioner's detention is preferable because her "entitlement to relief turns in part on locating [her] within the statutory framework of detention authority." Id. at 945. Indeed, "'[w]here an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available . . . .'" Id. (quoting Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Moreover, this argument must come first because, as will be explained, its resolution proves dispositive of Petitioner's Writ, leaving further discussion unnecessary.

With that said, the court begins its analysis with the statute. The Government has classified Petitioner as a "criminal alien" under § 1226(c), which provides, in relevant part:

> (1) Custody. The Attorney General shall take into custody any alien who–
>
> (A) is inadmissible by reason of having committed any offense covered in section 212(a)(2),
>
> (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),

5
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

> (C) is deportable under section 237(a)(2)(A)(I) on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 212(a)(3)(B) or deportable under section 237(a)(4)(B),
>
> *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release. The Attorney General may release *an alien described in paragraph (1)* only if the Attorney General decides . . . that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c) (emphasis added).

More specifically, the Government alleges that Petitioner falls under § 1226(c)(1)(A) due to her most recent felony conviction. And although there is not an explicit reference to the statute in his written orders, the IJ must have been mindful of § 1226(c)(2) when denying Petitioner's two requests for custody re-determination, since that section seemingly allows for ongoing detention at the discretion of the Attorney General without bail or any other type of judicial review.

Before this court, Petitioner asserts that § 1226(c) is inapplicable to her because she was not detained "when . . . released" from state criminal proceedings as § 1226(c) commands, but was instead taken into immigration custody approximately 11 months after her arrest and 6 months after the imposition of sentence. That being the case, Petitioner believes she is not "an alien described in paragraph (1)" for the purposes of ongoing detention under § 1226(c)(2).

Petitioner has raised the issue of § 1226(c)'s interpretation, on which there has been significant disagreement. Some tribunals, like the BIA, have afforded the "when . . . released" language little effect. To do so, the BIA found in In re Rojas, 23 I. & N. Dec. 117, 120 (BIA 2001), that the provision was "susceptible to different readings" and proceeded to discern its meaning by

6
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

examining the relevant statutory scheme. Based on this analysis, a majority of the BIA decided that "the statute as a whole is focused on the removal of criminal aliens in general, not just those coming into [ICE] custody 'when . . . released' from criminal incarceration." Id. at 122. It therefore concluded that aliens subject to ongoing detention under § 1226(c)(2), or those that qualify as "alien[s] described in paragraph (1)," are only those described in subsections (A) through (D) of § 1226(c)(1), "not including the 'when released' clause." Id. at 125.

Aside from the BIA, only one appellate court has confronted this issue directly. That one appellate court, the Fourth Circuit, held in Hosh v. Lucero, 680 F.3d 375, 384 (4th Cir. 2012), that the BIA's interpretation of § 1226(c) was a reasonable one. The Hosh court reasoned that the statutory language of § 1226(c) was ambiguous because the meaning of the word "when" was "not plain." Id. at 379. It then deferred to the Rojas decision, concluding that "the BIA's determination that criminal aliens . . . are subject to mandatory detention, despite not having been detained immediately upon release from state custody, is based on a permissible construction of § 1226(c)." Id. at 380.

Many district courts have been unwilling to accept the interpretation of § 1226(c) from Rojas.[6] For example, in Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, 1229-30 (W.D. Wash. 2004), the district court disagreed that the "when . . . released" provision was at all ambiguous; it means "just after the moment that." The court reasoned that "if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language 'after the alien is released,' 'regardless of when the alien is released,' or other words to that effect." Id. at 1230. "Instead, Congress chose the word 'when,' which connotes a much different meaning." Id. The court then held that § 1226(c) "does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody." Id. at 1231; see also Rianto v. Holder, No. CV-11-0137-PHX-FJM, 2011 U.S. Dist. LEXIS 112964, at *6-7, 2011 WL 3489613 (D. Ariz. Aug. 9, 2011) ("The vast majority of district

---

[6] It is noted that a court need not defer to an agency's interpretation of a statute "[i]f the intent of Congress is clear." Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 842 (1984).

7
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

courts to have considered the issue have concluded that § 1226(c) does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody. . . .[W]e conclude that, because petitioner was not taken into custody until seven years after he was released from custody for the crimes found as the basis for removability, mandatory detention under § 1226(c) is not authorized."); Zabadi v. Chertoff, No. C 05-03335 WHA, 2005 U.S. Dist. LEXIS 31914, at *12-14, 2005 WL 3157377 (N.D. Cal. Nov. 22, 2005) (rejecting application of Rojas to similar language in predecessor statute and holding that the Government "need not act immediately but has a reasonable period of time in which to detain.").

More recently, the district court in Bogarin-Flores v. Napolitano, No 12cv0399 JAH(WMc), 2012 U.S. Dist. LEXIS 112964, at *11, 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012), found when examining § 1226(c) "that the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody." Based on this conclusion, the court then determined on the specific case before it that Rojas was distinguishable since it "concerned an alien who was detained by immigration officials two days after release from criminal custody whereas, here, petitioner was detained two years after being released." Id. The court also declined to apply the reasoning of Hosh, noting that the Hosh court merely "found Rojas was decided correctly but did not present any independent reasoning or statutory construction, instead giving deference to the BIA's decision." Id. at *9.

Like the Quezada-Bucio and Bogarin-Flores courts, this court finds that the word "when" is not ambiguous as used in § 1226(c). In the statute, the "when released" clause immediately precedes the clause "without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Reading the complete sentence in a straightforward manner, it is obvious that the two clauses reference distinct periods of time. The latter portion of the sentence describes the period that commences only after release from custody. In contrast, the temporal reference of the "when released" clause must mean exactly what is states: the time when the alien is actually released from state custody. The connecting phrase of "without regard" means "regardless," "without consideration for," or "no matter what." Oxford Pocket Dictionary & Thesaurus (2nd ed. 2002).

8
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Putting all of this together, it becomes apparent that § 1226(c) requires that an alien be taken into immigration custody *at the time* the alien is released from criminal custody in order for the mandatory detention provisions of subsection (c)(2) to apply, not at some time in the future, no matter the alien's post-release status.

Since Congress' intent can be ascertained from the explicit language of § 1226(c), the BIA's decision in Rojas becomes unpersuasive. But even if an exercise in statutory interpretation was appropriate, this court would still find Rojas unpersuasive because the BIA majority that decided it appears to have engaged in an incomplete analysis. Indeed, in order for the BIA to reach its ultimate conclusion that the "when . . . released" language has no meaningful effect, it first needed to overlook "'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). Notably, this "cardinal rule" was not referenced by the Rojas majority. The result, therefore, is an interpretation of § 1226(c) which relegates the "when released" clause to either "superfluous" or "insignificant" status without an explanation of why such a construction is unavoidable.

Nor does the Fourth Circuit's reasoning in Hosh strengthen the flawed interpretation it adopted from Rojas. Even if "when" generally has more than one definition, this court has already explained why the structure of the sentence encompassing the questionable "when" renders the word susceptible to only one definition. In that regard, the "when" that appears in § 1226(c) immediately after the classes of removable aliens must be attributed its "ordinary or natural meaning;" that is, that "when" must mean "at or on which" or "just after the moment that." Oxford Pocket Dictionary & Thesaurus (2nd ed. 2002); Quezada-Bucio, 317 F. Supp. 2d at 1229 (citing Alikhani v. Fasano, 70 F. Supp. 2d 1124, 1130 (S.D. Cal. 1999). Employing any of the "temporally broader" definitions noted in Hosh would eviscerate the statute's plain language by simultaneously blurring its obvious references to distinct time periods and diminishing the Congressional intent embodied by those references. For this reason, any alternative definition of "when" was never in the running, insofar as § 1226(c) is concerned.

9
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

1    Furthermore, an interpretation of § 1226(c) requiring immediate detention upon release from
2    criminal custody is not a "strained" one considering the weight of the right implicated by its effect.
3    Hosh, 680 F.3d at 380. "There can be no doubt that individual liberty is one of the most
4    fundamental rights protected by the Constitution." Tijani v. Willis, 430 F.3d 1241, 1244 (9th Cir.
5    2005). To be sure, this right is no less important to an alien, even if the alien was never lawfully
6    admitted to this country. "[T]he Due Process Clause applies to all 'persons' within the United
7    States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent."
8    Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Although it is true that "Congress may make rules as
9    to aliens that would be unacceptable if applied to citizens," and is not required "to employ the least
10   burdensome means to accomplish its goal" when enacting provisions of immigration law (Demore v.
11   Kim, 538 U.S. 510, 521, 528 (2003)), the liberty interest implicated by any civil detention statute,
12   especially one which calls for imprisonment without review, makes it unsurprising why Congress
13   would want to limit its application to a particular class of individuals detained at a particular time.

14   Moreover, the court is not convinced that the "when released" clause of § 1226(c) would still
15   be meaningless even if the section were read to require immediate detention upon release. See
16   Hosh, 680 F.3d at 381-83. The Hosh court reasoned this was so because § 1226(c) does not
17   reference a consequence for the Government's failure to immediately detain a criminal alien. Id. at
18   382. That may be true. But it is equally true that § 1226 is more than just one subsection, and it is
19   unexplained in Hosh why the search for a statutory consequence was limited to just one portion of
20   the statute. Accordingly, this court construes § 1226 as a whole, including all of its subsections, and
21   finds that the statute provides an implicit consequence if timely detention under subsection §
22   1226(c) does not occur. When that happens, detention of the alien is still permissible but will fall
23   under subsection § 1226(a) rather than § 1226(c), and will be subject to the former's review
24   provisions. Tijani, 535 F.3d at 949. Although it has been said otherwise, this reading of the statute
25   does not thwart congressional intent or prejudice the public interest underlying it. Hosh, 600 F.3d at
26   382. As noted, the Government may still detain a criminal alien even if it cannot do so § 1226(c).

27   In sum, this court holds that the "when . . . released" clause of § 1226(c) means something.
28   Aliens subject to mandatory detention must be inadmissible or deportable under subsection (1) of §

10
CASE NO. 5:13-cv-00512 EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

1226(c) and must also be detained at the time they are released from criminal custody, or within a reasonable period of time thereafter,[7] in order to be considered "an alien described in paragraph (1)" for the purposes of § 1226(c)(2).

As to this case, the facts show that Petitioner was not detained by ICE until 11 months after her arrest and 6 months after criminal conviction. Since there is no evidence to suggest that Petitioner hid from immigration authorities or did anything other than return to her home in Oakland, those time periods cannot be considered reasonable in order to justify detention under § 1226(c). Petitioner detention must therefore be classified under § 1226(a), under which she is entitled to a bond hearing. The Petition for Writ of Habeas Corpus will therefore be granted.

## IV. ORDER

Based on the foregoing, the Petition for Writ of Habeas Corpus is GRANTED.

Within 30 days from the date this Order is filed, the Government shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) before an immigration judge with authority to grant bail unless the Government establishes that Petitioner is flight risk or a danger to the community.

The clerk shall close this file.

**IT IS SO ORDERED.**

Dated: March 13, 2013

EDWARD J. DAVILA
United States District Judge

---

[7] This qualification must be included in order to alleviate valid concerns raised by others who have had occasion to analyze § 1226(c). See, e.g., Rojas, 23 I. & N. Dec. at 128 ("It is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of the Service to appear at the jailhouse door to take custody of an alien at the precise moment of release."). It is not without precedent in this district. See Zabadi, 2005 U.S. Dist. LEXIS 31914 at *14 ("This order holds that the Department of Homeland Security need not act immediately but has a reasonable period of time after release from incarceration in which to detain."). In fact, the facts of this case demonstrate the need to read reasonability into the provision. Here, Petitioner was sentenced to the time she served prior to conviction. Since she did not qualify for mandatory detention under 8 U.S.C. § 1182 (as incorporated by § 1226(c)) until she was actually convicted, an interpretation requiring immediate detention upon release without also affording some reasonable leeway would have required ICE to meet Petitioner on the steps of the courthouse. Such a requirement would be absurd.